977 So.2d 300 (2008)
STATE of Louisiana, Applicant,
v.
Steven A. OWENS, Respondent.
Nos. 43,397-KM, 43,431-KW.
Court of Appeal of Louisiana, Second Circuit.
March 13, 2008.
Whitley Robert Graves, Benton, for Respondent.
John Schuyler Marvin, District Attorney, Robert Randall Smith, Assistant District Attorney, for Applicant.
Before GASKINS, CARAWAY and DREW, JJ.
We consolidate the motion for extension of time (NO. 43,397-KM) with the state's writ application (NO. 43,431-KW) and grant the motion to extend the time for filing the writ application, noting that the general policy of this court is to require a writ applicant to first apply to the trial court for extension, before invoking this court's authority to grant an extension.
*301 In considering the writ application, we first note that five of the alleged discrepancies between the Operations Plan and the execution of the actual checkpoint procedures, (i.e., the wording of the warning signs, use of flares, prepublication of the checkpoint, changes in police personnel, and an alternate route for motorists not wishing to go through the checkpoint), are not included in the guidelines found in State v. Jackson, XXXX-XXXX (La.7/6/00), 764 So.2d 64. Accordingly, none of these factors can even arguably support a claim for the suppression of evidence of impairment revealed by this checkpoint.
More problematic are two arguable Jackson deficiencies in the Operations Plan, as noted by the learned trial court:
 lack of a detailed explanation of the exact type of specific non-random criteria to be used in stopping motorists; and
 lack of a stated duration of the checkpoint.
The reality of this checkpoint was that every motorist was stopped during a checkpoint which lasted a total of 2.5 hours. Neither of these facts is disputed, nor can either fact be remotely considered as unreasonable police action. At issue is the wording of the Operations Plan itself.
I. Non-random criteria for stopping motorists
The extremely detailed "Sobriety Check Point Operations Plan" addresses this concern under the Subsection entitled "Special Instructions," found in the plan under the Section entitled "Coordinating Instructions," to-wit:
4. Special Instructions: DPS Guidelines will be followed at all times as case law that affirms check points as constitutional is based on checkpoints conducted under those conditions. A few key points are as follows:
* * *
f. A set pattern of which vehicles are stopped. All, every third, etc. No random stops.
While admittedly not defining the specific means of assuring a non-random criteria for stopping motorist, the language in fact does require a non-random criteria for stopping motorists. Every vehicle was stopped during the 150 minute check point. Therefore, the stops could not have been more "non-random." The Operations Plan forbade the officers to conduct random stops.
The landmark checkpoint case, Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), in fact held: "This holding does not preclude the States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." (Our emphasis.)
II. Duration
The operations plan does not list a specific duration, other than to allow that the operation could be ". . . terminated when conditions exist that make the checkpoint unsafe for any person." This falls short of the Jackson guidelines.
Notwithstanding this omission from the Operations Plan, we note that:
 the checkpoint point was operated for 2.5 hours;
 no one has alleged that this time frame was unreasonable;
 the average stop lasted 24 seconds; and
 Jackson lists no arbitrary time frame limitation requirement.
We find that this one deviation from the guidelines of Jackson to be de minimus, not rising to the level of a constitutional *302 violation of the defendant's rights which would require suppression of the evidence gathered during the stop.
Indeed, the Jackson case was remanded to the trial court for the purpose of conducting a hearing to determine whether the checkpoint met constitutional requirements using a "reasonableness balancing test that considers . . ." the many factors set out in Jackson.
Impaired operators kill innocent motorists. Checkpoints reveal impaired operators of motor vehicles and promote public safety. These undisputed facts, together with the professional planning and reasonable execution of this check point, tip the scales towards denying defendant's motion to suppress. The minimal variation from the nine[1]Jackson guidelines should not result in the suppression of the evidence of impairment revealed by the check point through reasonable police activity.
"Suppression of evidence, however, has always been our last resort, not the first impulse."[2]
The writ is granted and the granting of the defendant's motion to suppress is vacated. The motion to suppress is denied and this matter is remanded for further proceedings.
NOTES
[1] Location of checkpoint, time of checkpoint, duration of checkpoint, other regulations for operation of the checkpoint, preferably in written form (our emphasis), advance warning to the approaching motorist, other indications to safely warn of the impending stop, and to provide notice of the official nature as a police checkpoint, detention of the motorist for a minimal length of time, and use of a systematic nonrandom criteria for stopping motorists.
[2] Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006).